1  Laura Each Nguyen, SBN 203141
   Law Offices of Laura D. Each, PC
2  5776 Lindero Canyon Rd., D-233
   Westlake Village, CA 91362
3  Telephone: (818) 665-4083
   Fax: (818) 206-3230
4

5  Attorney for Plaintiff
   TRICOR AMERICA, INC.
6

7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11 TRICOR AMERICA, INC., a California
   corporation,                              Case No.: C07 4949 CRB
12
           Plaintiffs,
13
                                             DECLARATION OF LAURA
14 vs.                                       EACH NGUYEN IN SUPPORT
                                             MOTION FOR SUMMARY
15 DHL CANADA EXPRESS, LTD. a Canadian       JUDGMENT AND IN THE
   corporation; LOOMIS CANADA HOLDING        ALTERNATIVE MOTION FOR
16 COMPANY, INC., a Canadian corporation; and SUMMARY ADJUDICATION;
17 DOES 1 though 25, inclusive.              MEMORANDUM OF POINTS
                                             AND AUTHORITIES IN SUPPORT
18                                           THEREOF
19         Defendants.

20                                           Date: June 27, 2008
21                                           Time: 10:00 a.m.
                                             Courtroom: 8
22

23                                           *[Declarations of Laura Each
24                                           Nguyen, Andy Sun, Richard Cruz,
                                             and John Marticio; Notice of Motion
25                                           and Motion for Summary Judgment;
26                                           Statement of Uncontroverted Facts
                                             and Conclusions of Law filed
27                                           concurrently herewith]*

28

---

1

DECLARATION OF LAURA EACH NGUYEN

I, Laura Each Nguyen, declare as follows:

1. I am an attorney, licensed to practice before all of the courts in the State of California and I am attorney of record for Plaintiff Tricor America, Inc. in this action. The statements contained in this declaration are made of my own personal knowledge and where made on information and belief, I believe them to be true. If called upon to testify thereto, my testimony will be substantially the same as the statements contained in this declaration.

2. On or about April 7, 2008, I took the deposition of Ciro Anzivino, an employee of DHL Canada. During the deposition of Mr. Anzivino, Mr. Anzivino acknowledged that DHL Canada continued to request Tricor's services for four months following their notice of the rate increases. A true and correct copy of the pertinent portions of Mr. Anzivino's deposition are attached hereto AS Exhibit A and incorporated by reference.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of May 2008.

_____
LAURA EACH NGUYEN

1   Q.   Did he have a copy of the rate increase
2   notice?
3   A.   No.
4   Q.   Had he remembered seeing one?
5   A.   I don't -- I don't remember.
6   Q.   Did he acknowledge receiving the
7   November -- the invoice sent by Tricor in
8   November 2006?
9   A.   I'm not sure.
10  Q.   Do you recall approving for payment the
11  invoice sent in November 2006?
12  A.   Yes.
13  Q.   And are you aware that the notice of rate
14  increase is sent with the invoice?
15  A.   I don't recall.
16  Q.   Did you object to the 2006 rate increase?
17  A.   Yes.
18  Q.   When did you object to the November 2006
19  rate increase?
20  A.   I don't remember exactly when.
21  Q.   Your best estimate?
22  A.   It was in 2007.
23  Q.   Why didn't you object to the 2006 rate
24  increase upon receiving the notice?
25  A.   Because I didn't receive it until 2007.

1   Q.   But Loomis received it in 2006. Do you --
2   are you aware of that?
3   A.   No, no.
4   Q.   Did you continue to use Tricor's services
5   after receiving the notice?
6   A.   Yes.
7        MS. DUPIC: Wait. Objection. Misstates
8   prior testimony.
9        MS. NGUYEN: Q. How long after receiving
10  the notice did you continue to use Tricor's
11  services?
12  A.   Approximately --
13       MS. DUPIC: Well, objection. He never
14  said that he received the notice.
15       MS. NGUYEN: Yes, he did. He just
16  testified that he received the notice in 2007.
17  You're trying to change his testimony.
18       MS. DUPIC: No.
19       MS. NGUYEN: And you're coaching the
20  witness.
21       MS. DUPIC: No, I'm not.
22       MS. NGUYEN: Yes, that's exactly what
23  you're doing.
24       MS. DUPIC: No, I'm not. Could we have
25  the question read back, please?

1          (Record read as follows:
2          QUESTION:
3          "How long after receiving the notice did
4           you continue to use Tricor's
5           services?")
6          MS. DUPIC:  You can answer if you know.
7          THE WITNESS:  Approximately four months.
8          MS. NGUYEN:  Q.  And did you pay for those
9  services?
10         A.   Partial.
11         Q.   Why didn't you pay for all of the
12  services?
13         A.   Because I -- basically I identified that
14  they were incorrect, the invoicing was incorrect.
15         Q.   And how were they incorrect?
16         A.   The rates went up dramatically.
17         Q.   Were the rates reflective of the notice?
18         A.   Yes.
19         Q.   Okay.  So how were they incorrect?
20         A.   They were dramatically higher.
21         Q.   But they were reflective of the notice?
22         A.   Yes.
23         Q.   Did you intend to pay for the services,
24  after receiving the notice, pursuant to the rates
25  noticed?

```
 1        A.   I don't understand.
 2        Q.   Okay.  You have acknowledged that you
 3   received the notice and you continued to use
 4   Tricor's services for another four months.
 5             When you received the notice and you saw
 6   the rates, did you intend to pay for those services
 7   at those rates after you received the notice?
 8        A.   Yes, if it was correct, as per our initial
 9   agreement.
10        Q.   And what initial agreement is that?
11        A.   When the relationship started between
12   Tricor and DHL or Loomis.
13        Q.   Okay.  And did you ever determine whether
14   or not it was correct pursuant to the agreement that
15   you just referred to?
16        A.   No.
17        Q.   And how was it incorrect?
18        A.   I was trying to work with Andy to come up
19   with this initial agreement to --
20        Q.   Okay.
21        A.   -- basically confirm the invoices.
22        Q.   Okay.  And did you reach a conclusion?
23        A.   No, no.
24        Q.   So you don't know if those rates are
25   correct or not today?
```

## PROOF OF SERVICE BY MAIL

I, Laura Each Ngueyn, declare as follows:

I am over the age of 18 years, and not a party to or interested in the within entitled action. I am a principal at the Law Offices of Laura D. Each and my business address is 5776 Lindero Canyon Road, D-233, Westlake Village, CA  91362.

On May 19, 2008, I served by mail the following documents:

### DECLARATION OF LAURA EACH NGUYEN

I enclosed a true and correct copy of said document(s), in an envelope via United States Mail, addressed as follows:

Carrie M. Dupic
Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113

I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  The firm's practice is to deposit mail with the United States Postal Service in Westlake Village, California, on the same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing on the aforementioned date, following ordinary business practice.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on May 19, 2008 in Westlake Village, California

_____
Laura Each Nguyen, Attorney at Law