Laura Each Nguyen, SBN 203141
Law Offices of Laura D. Each, PC
5776 Lindero Canyon Rd., D-233
Westlake Village, CA 91362
Telephone: (818) 665-4083
Fax: (818) 206-3230

Attorney for Plaintiff
TRICOR AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICOR AMERICA, INC., a California corporation, | Case No.: C07 4949 CRB |
| Plaintiffs, | **PLAINTIFF TRICOR AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND IN THE ALTERNATIVE MOTION FOR SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| DHL CANADA EXPRESS, LTD. a Canadian corporation; LOOMIS CANADA HOLDING COMPANY, INC., a Canadian corporation; and DOES 1 though 25, inclusive. | |
| Defendants. | |
| | Date: June 27, 2008 Time: 10:00 a.m. Courtroom: 9 |
| | *[Declarations of Laura Each Nguyen, Andy Sun, Richard Cruz, and John Marticio; Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith]* |

1

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 27, 2008 at 10:00 a.m., or as soon

thereafter as counsel may be heard in Courtroom 9 of the above-captioned Court,

located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiff

Tricor America, Inc. ("Tricor") will and hereby does move this Court , pursuant to

Federal Rule of Civil Procedure Rule 56, for an Order granting partial summary

judgment on:

(1)    First Cause of Action for Breach of Contract Cause of Action in

Defendant's Counter-Claim with respect to Defendants DHL CANADA

and LOOMIS with respect to Defendants claim for breach of contract;

(2)    Second Cause of Action for Quantum Meruit in Defendant's Counter

Claim with respect to Defendants DHL CANADA and LOOMIS with

respect to Defendants claim for quantum meruit.

(3)    Third Cause of action for Restitution of Unjust Enrichment in

Defendant's Counter-Claim with respect to Defendants DHL CANADA

and LOOMIS with respect to Defendants claim for restitution.


This Motion is based on this Notice of Motion; the accompanying

Memorandum of Points and Authorities; the Statement of Uncontroverted Facts

and Conclusions of law; the Declarations of Laura Each Nguyen, Scott Tanaka,

2

1  Rick Cruz, and John Marticio and Exhibits thereto; all other matters of which this

2  Court may take judicial notice; the pleadings and other papers file in this action;

3
4  and such further evidence and argument as may be presented at or before the

5  hearing on this matter.

6

7

8  Dated:      May 19, 2008

9                                                Laura Each Nguyen
                                                 Attorney for Plaintiff
10                                               TRICOR AMERICA, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## 1.    **INTRODUCTION**

Tricor America, Inc. and Defendants each had agreements to provide service for each other. Defendants chose to raise their rates for the service provided to Tricor. Shortly thereafter, Tricor decided to do the same as to the service Tricor performed for Defendants and obtained another vendor to perform service for Tricor.

Instead of either terminating Tricor's service for Defendants or paying Tricor for the services rendered at the designated rates, Defendants continued to use Tricor's services, but refused to pay for said services. Defendants only defense is that Tricor raising its rates is somehow "unfair" and "unreasonable." Interestingly, Defendants take this position while acknowledging that Defendants raised their rates first and while claiming that Defendants rate increase was perfectly reasonable. Setting aside the hypocritical nature of Defendants position, Defendants argument is without legal foundation and should be rejected as a matter of law.

## 2.    **FACTUAL SUMMARY**

A.    History of the Business Relationship

In or about 1984, Tricor America, Inc. and Loomis Courier entered into an agreement wherein each courier company agreed to do service for the other courier at agreed upon rates. [SSUF, ¶ 4]. For the most part, the rates were roughly equal considering the differing types of work performed by each courier for the other. There was no set time that this agreement was to be in place and either party could terminate the agreement upon reasonable notice. [SSUF, ¶ 4].

4

B.    Defendants Rate Increase

After twenty years of operating in this manner, Loomis was acquired by DHL and DHL decided to unilaterally change the agreement. [SSUF, ¶ 6, 7]. DHL began increasing rates on Tricor, frequently without any notice. [SSUF, ¶ 7, 8]. Tricor would protest the rate increase immediately upon receiving the invoice and Ben Fan of DHL/Loomis would advise Tricor to short pay the invoice due to the lack of notice. [SSUF, ¶ 8 - 10]. Tricor would do as instructed and considered the matter closed. [SSUF, ¶ 10]. Then, in July 2006, Tricor received a formal notice of rate increase and also began receiving collection calls for the short-paid invoices. [SSUF, ¶ 11]. When Defendant's collection department continued to harass Tricor for payment on the short-paid invoices despite being advised of Mr. Fan's instructions, Tricor decided to stop using the services of DHL/Loomis altogether and arranged for another courier company to handle the work that Loomis had previously handled on behalf of Tricor. [SSUF, ¶ 12]. Tricor paid all invoices issued by Defendants after July 2006 at the new rates as demanded by Defendants.


C.    Tricor's Rate Increase

Once Tricor had made the necessary transition to its new Canadian agent, it provided DHL/ Loomis with a notice of rate increase for the services Tricor provided to Defendants. [SSUF, ¶ 13]. Said notice was provided in November 2006 and was delivered to Defendants along with the October 2006 invoice for services provided by Tricor. The October 2006 invoice was paid without incident, so Tricor is certain the Notice of Rate increase was received. [SSUF, ¶ 13].


D.    Tricor's Disputed Invoices

Thereafter, Loomis paid the October 2006 invoice and Tricor began charging DHL/Loomis at the new rate structure. [SSUF, ¶ 14]. Tricor did not

5

1  receive timely payment and began collection efforts. [SSUF, ¶ 15]. Tricor's
2  accounts receivable manager, Andy Sun, began calling and emailing Defendants
3  and specifically advised them that if Tricor did not receive immediate payment of
4  the outstanding invoice, Tricor would terminate service. Defendants then
5  contacted Andy Sun and assured him that payment would be forthcoming and on
6  March 19, 2007, Defendants paid the December 2006 invoice at the new rate
7  structure, but in the wrong currency. [SSUF, ¶ 16]. On March 26 2007,
8  Defendants also paid the January 2007 invoice at the new rate structure, in full.
9  [SSUF, ¶ 17].

10  After receiving payment in Canadian dollars instead of United States dollars,
11  Tricor contacted Defendants and demanded payment of the additional amounts
12  due. [SSUF, ¶ 18]. In April 2007, Defendantsfor the first time questioned the new
13  rates. [SSUF, ¶ 19]. Tricor explained to Defendants that they raised their rates on
14  Tricor and therefore, Tricor raised its rates. Thereafter Defendants requested that
15  Tricor withdraw its rate increase and offered to withdraw its rate increase -- Tricor
16  declined. Defendants then continued to use Tricor's service until May 11, 2007,
17  when it cancelled service. [SSUF, ¶ 20].

18
19      E.    DHL'S DISPUTED INVOICES
20  Thereafter, Tricor filed suit to recover amounts owed for services rendered.
21  After Tricor filed suit, Defendants filed a counter-claim that alleged causes of
22  action based upon breach of contract and quantum meruit, as well as a cause of
23  action for unjust enrichment. [SSUF, ¶ 23]. The claims for breach of contract and
24  quantum meruit were based on Defendants claim that Tricor had short-paid certain
25  invoices, as well additional amounts owed for services rendered well after Tricor
26  terminated service. After a brief investigation, Tricor learned that one of its
27  customer, Pliant, had inadvertently used Tricor's billing account number, instead
28

1  of its own and therefore, Defendants had improperly assigned the charges to

2  Tricor's account.  [SSUF, ¶ 25].

3      Defendants' cause of action for rescission was based upon their alleged

4  mistake of fact and their claim that the payments made to Tricor were made "by

5  mistake."

6      Tricor now brings this motion for summary judgment on the grounds that

7  there is no triable issue of fact on the cause of action for rescission because

8  Defendants cannot establish a prima facie case for breach of contract, quantum

9  meruit, or rescission.

10

11  **3.    ARGUMENT**

12      A.    <u>**Standard for Summary Judgment**</u>

13      Under Rule 56, summary judgment should be issued upon a showing that

14  there is no genuine issue of material fact as to a particular claim or defense.

15  Federal Rules of Civil Procedure; *Beal Bank, SSB v. Pittorino* (1st Cir. 1999) 177 F.

16  3d 65, 68; *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.* (CD

17  CA  1993) 860 F. Supp 1448, 1450).

18      In this case, there is no genuine issue of fact.  Tricor notified Defendants of

19  the rate it would charge for the services.  Tricor performed the services at the

20  notified rate.  Defendants paid the first two months invoices at the notified rate and

21  then decided after the fact that it did not want to pay for the services rendered.

22  After Tricor filed suit, Defendants attempted to invent a basis for a counter-claim.

23  This counter-claim is completed unsupported in fact or in law and therefore, is ripe

24  for summary judgment.

25

26

27

28

**B.    As A Matter Of Law, Counter-Claimants Cannot Establish That There Was Any Unjust Enrichment**

Defendants largest claim is that Tricor should be required to reimburse Defendants for amounts paid for services rendered based upon the theory of unjust enrichment. However, defendants cannot establish even the most basic requirements of unjust enrichment.

In order to establish a cause of action for restitution, one must enrich themselves at another's expense under circumstances where it is unjust for the person to retain the benefit. Rest. Restitution, supra section 1; *California Federal Bank v. Matreyek* (1992) 8 Cal. App. 4th 125, 131. Restitution should be denied where a payment is made mistakenly to a creditor that did not have knowledge of the mistake or who changed its position in reliance upon the mistake. *City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal. App. 4th 633, 637; *California Federal Bank v. Matreyek* (1992) 8 Cal. App. 4th 125, 133.

In *City of Hope*, an insurance carrier sought return of amounts paid for a patient under a theory of unjust enrichment based upon the fact that after making the payments, the carrier determined that there was not coverage for the care. City of Hope at 636. The Court denied restitution on the grounds that the hospital had done nothing wrong and that the mistake was solely that of the insurance carrier. *Id.*, at 637. Particularly, the Court stated, "Stated plainly, if it's your mistake, you get to pay for it—unless the recipient misled you or accepted the payment knowing you didn't owe it." *Id.*

Similarly, in the *California Federal Bank v. Matreyek* case, the Matreyek's contacted the bank servicing their mortgage and were told that they could pay off their loan without any pre-payment penalty. The Matreyek's paid off the loan and obtained substitute financing. Thereafter, the bank learned that there was a pre-payment penalty on the loan and demanded additional funds from the Matreyek's on a theory of unjust enrichment. The Court rejected the bank's claims on the

8

1  grounds that the mistake was the bank's and Matreyek's relied on the waiver of the
2  pre-payment penalty and obtained substitute financing. *Supra generally,*
3  *Matreyek.*

4      Although this matter does not involve real estate or medical insurance, the
5  same principles apply and require the rejection of the Counter-claimant's unjust
6  enrichment claim. In this case, Plaintiff raised its rates for courier service after
7  receiving defendants notice of rate increase. Plaintiff gave notice and the notice
8  was mailed with the October 2006 invoice. Defendants paid the October 2006
9  invoice and Tricor began billing defendants pursuant to the new rate structure in
10 November 2006. In January 2007, Tricor advised defendants that if it did not
11 receive payment forthwith it would terminate service and thereafter, in March
12 2007, defendants paid the first bill issued under the new rate structure, but in the
13 wrong currency. As such, Tricor continued to provide service. One week later on
14 March 26, 2007, defendants paid the second bill in the correct currency. It was not
15 until March 2007, wherein defendants claimed that the payment was somehow a
16 mistake and defendants have admitted that Tricor did not "trick" defendants into
17 paying the bill, nor did they have any reason to know of the "mistake." As such,
18 there is no basis for any claim for unjust enrichment or restitution and summary
19 judgment should be granted.

20

21     **C.**    **COUNTER-CLAIMANTS CAUSES OF ACTION FOR**
22            **BREACH OF CONTRACT AND QUANTUM MERUIT ARE**
23            **BARRED AS A MATTER OF LAW**

24     A cause of action for breach of contract accrues if the following essential
25 elements are fulfilled:

26     (1)    A valid contract exists;

27     (2)    Plaintiff performs, or has an excuse for non-performance;

28     (3)    The defendant fails to fully perform its contractual obligations;

1   (4)    Damages result therefrom.

2   *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal. App. 3d 100, 103 (citing

3   4 Witkin California Procedure, Pleading, §464 (3rd Ed. 1985)).

4         In this case, counter-claimant has alleged that Tricor America cannot show

5   that Tricor failed to fully perform its contractual obligations or that any damages

6   resulted.

7

8            1)    Tricor Paid for All Services Provided by Defendants at the

9                  Agreed Upon Price

10        Tricor's agreement with Defendants required that it pay a specific amount

11  per shipment, based upon weight and shipment destination. SSUF. The agreement

12  further provided that each party would provide notice to the other party for any rate

13  increases. Tricor paid the agreed upon rates for the services provided, but in some

14  circumstances, Defendants overcharged Tricor for more than the agreed upon rates.

15  Tricor contacted Defendants and was advised by Defendants to short-pay the

16  invoice and that the short-paid amount would constitute full payment. Tricor did

17  as instructed and now, Defendants seek to recover the short-paid amount. This is

18  improper because first, Tricor paid all amounts due under the contract; and second,

19  by instructing Tricor to short-pay the invoice, Defendants waived any further claim

20  for amounts due and admitted that they improperly billed Tricor America, Inc. As

21  such, there is no genuine issue of material fact at issue as to this claim and it

22  should dismissed.

23

24            2)    Counter-Claimants Allege Damages For Services That Were

25                  Not Requested By Tricor America And Should Be Stricken As

26                  A Matter Of Law.

27        It is elementary that a claim for breach of contract must be supported by a

28  contract entered into by someone authorized to act on behalf of Tricor America,

10

Inc. In this case, Tricor America, Inc. terminated its account with defendants on or before November 2006 and stopped requesting any services by defendants.

One of Tricor's customers, Pliant Corp., also has an account with defendants and after Tricor terminated all services by defendants, Pliant continued to order services from defendants. For some unknown reason, Defendants have charged Tricor with those services, despite the fact that Pliant's account with Defendants has absolutely nothing to do with Tricor. [SSUF, ¶ 25]. Since Tricor did not request those services, all such charges should be stricken from the counter-claim. Those charges requested by Pliant consist of $331.24.

> 3)    Portions of Counter-Claimants claim for Breach of Contract
>        and Quantum Meruit are Time Barred and Should be Excluded
>        as a Matter of Law

49 U.S.C. section 14705 sets forth that all claims for collection of amounts due for transportation of goods internationally is subject to an eighteen (18) month statute of limitations from the point at which goods were delivered. In this case, Counter-Claimant filed their Counter-Claim on December 17, 2007, making any claims for deliveries prior to June 17, 2006, time-barred as a matter of law.

Counter-Claimants claim for damages of at least $515.02 for transportation services prior to this date and Tricor requests that the Court strike these damages as a matter of law.

## 4.    CONCLUSION

Defendants' claims against Tricor are simply not available under either State or Federal law. Defendants brought these causes of action simply to gain some sort of strategic advantage, without any evidence to support these claims. As such,

1  there is genuine issue of fact, and these claims should be dismissed as a matter of

2  law.

3

4  Dated:        May 19, 2008

5                                                Laura Pach Nguyen
                                                Attorney for Plaintiff
6                                                TRICOR AMERICA, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY MAIL

I, Laura Each Ngueyn, declare as follows:

I am over the age of 18 years, and not a party to or interested in the within entitled action. I am a principal at the Law Offices of Laura D. Each and my business address is 5776 Lindero Canyon Road, D-233, Westlake Village, CA 91362.

On May 19, 2008, I served by mail the following documents:

## MOTION FOR SUMMARY JUDGMENT

I enclosed a true and correct copy of said document(s), in an envelope via United States Mail, addressed as follows:

> Carrie M. Dupic
> Robinson & Wood, Inc.
> 227 North First Street
> San Jose, CA 95113

I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. The firm's practice is to deposit mail with the United States Postal Service in Westlake Village, California, on the same day in the ordinary course of business. I sealed said envelope and placed it for collection and mailing on the aforementioned date, following ordinary business practice.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on May 19, 2008, in Westlake Village, California

Laura Each Nguyen, Attorney at Law

13